IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA KOCHENOUR, | ) | |
| | ) | CASE NO. 3:14-CV-2451 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. No. 16).  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Joshua Kochenour's ("Plaintiff" or "Kochenour") applications for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I.  PROCEDURAL HISTORY

On June 28, 2012, Plaintiff protectively filed applications for Supplemental Security Income benefits and Disability Insurance benefits.  (Tr. 179, 185).  Plaintiff alleged disability as of January 1, 2011, due to back and feet problems, along with hand and shoulder injuries.  (Tr.

1

47, 179, 185). The Social Security Administration denied his claims initially and upon reconsideration. (Tr. 55, 65, 84, 100).

Upon Plaintiff's request, a video hearing was held before Administrative Law Judge ("ALJ") Sandra DiMaggio Wallis on June 21, 2013. (Tr. 8, 26-46). Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id.*). A vocational expert ("VE"), George Coleman, also appeared and testified. (*Id.*).

On July 30, 2013, the ALJ issued a decision, finding Plaintiff did not qualify for benefits. (Tr. 8-18). After applying the five-step sequential analysis,[1] the ALJ concluded that Plaintiff did not retain the ability to perform his past work, but that he was able to perform other work existing in significant numbers in the national economy. (*Id.*).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

  (1)   If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

  (2)   If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

  (3)   If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

  (4)   If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

  (5)   Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

The Appeals Council denied Plaintiff's request for review, making the ALJ's July 30, 2013, determination the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. EVIDENCE

### A.  Personal Background Information

Plaintiff was born on May 5, 1979, was 31-years-old as of the alleged onset date and 34-years-old at the time the ALJ rendered her decision. (Tr. 47). As a result, Webb was considered a "younger person" for Social Security purposes. 20 C.F.R. §§ 404.1563(c), 416.963(c). The ALJ found that Plaintiff had past relevant work as a painting helper and a factory warehouse worker. (Tr. 16).

### B.  Medical Evidence[2]

The majority of the medical evidence on the record relates to Plaintiff's physical impairments, namely impairments of his knees, feet, shoulders, back, and right hand. However, Plaintiff does not challenge the ALJ's findings with respect to his physical impairments, but maintains error only as to the ALJ's analysis of Plaintiff's alleged mental impairments. Accordingly, this summary focuses on medical evidence relating to Plaintiff's mental condition during the relevant period.

Plaintiff reported a change in his condition upon reconsideration of his claim, alleging he now suffered from severe depression in addition to his physical ailments. (Tr. 70, 86). At the request of the state, Brian Griffiths, PhD., conducted a psychological disability evaluation on December 21, 2012, to determine the presence or absence of a mental disorder, and any resulting limitations and mental activities required to work. (Tr. 512). Dr. Griffiths reported that, in

---

[2] The following recital of Plaintiff's medical record is an overview of the medical evidence pertinent to Plaintiff's appeal.  It is not intended to reflect all of the medical evidence of record.

addition to his physical injuries and impairments, Plaintiff "alluded to depression" as a further limitation to his ability to work. (Tr. 513). The report indicated Plaintiff stated no history of psychiatric hospitalization or community health system involvement, and that mental illness does not run in his family. (Tr. 514). When questioned about his emotional condition, Plaintiff reported depression with stressors from loss of physical functioning, financial hardship, and chronic pain. (*Id.*). Additionally, Dr. Griffiths reported Plaintiff further alluded to anxiety, stating he had previously suffered from two panic attacks and "worries especially about money." (*Id.*). The report indicated Plaintiff stated he cries, he withdraws from others, no longer finds pleasure in activities he formerly enjoyed, sleeps poorly, has low energy, and is often irritable and short-tempered. (*Id.*). Further, he denied suicidal thinking, and reported adequate appetite. (*Id.*).

Dr. Griffiths did not conduct any psychological testing but observed that, while Plaintiff did not display unusual behaviors, delusional thinking, or autonomic or motoric indications of anxiety, he did have a dysphoric mood and displayed a downcast facial expression. (Tr. 515). Dr. Griffiths determined there were no major inconsistencies in the information provided by Plaintiff during the examination, that self-reported data appeared reliable, and diagnosed Plaintiff with Depressive Disorder NOS. (Tr. 516). He found moderate symptomatology and assigned Plaintiff a GAF score of 55. (*Id.*).

Regarding the impact of his mental condition on work-related abilities, Dr. Griffiths determined Plaintiff would have no difficulties understanding, remembering, and following simple instructions. (Tr. 517). However, his findings indicated Plaintiff's emotional difficulties could interfere with his ability to pay attention and concentrate, and that his low energy and poor frustration tolerance may interfere with task persistence and pace. (*Id.*). Dr. Griffiths further

4

opined his depression may negatively impact Plaintiff's ability to effectively interact with coworkers, supervisors and the general public (to some extent), and that Plaintiff's mental condition could be exacerbated by day-to-day work stress and pressures, leading to crying, withdrawal, and slowed work performance. (*Id.*).

On January 3, 2013, Jennifer Swain, Psy.D., a state agency psychological consultant, reviewed the evidence and conducted an assessment of Plaintiff's mental condition and limitations. (Tr. 77-78, 93-94). Dr. Swain determined Plaintiff suffered from affective disorders that were severe in nature. (Tr. 77, 93). In coordination with a finding that Plaintiff did not meet the "B" criteria of the Listing, Dr. Swain found no restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (Tr. 77, 81-82, 93, 97-98). Further, the report stated that evidence did not establish the presence of "C" criteria of the Listings. (Tr. 77, 93). Although Dr. Swain concluded work stress might exacerbate depressive episodes, Plaintiff did not decompensate from exposure to the workplace, he retained the ability to work in a relatively static setting, and was only moderately limited in his ability to respond appropriately to changes in the work setting. (Tr. 82, 98).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.  The claimant has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date.

3.  The claimant has the following severe impairments: knee disorder, feet disorder, and shoulder disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry and push/pull up to twenty pounds occasionally and up to ten pounds frequently, stand/walk six hours per eight-hour workday, and sit six hours per eight-hour workday. He can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He must change positions every hour and will be off task for one minute each time. He can occasionally reach overhead with the dominant right upper extremity and can frequently push, pull, and operate foot controls with the right lower extremity. He must avoid unprotected heights or moving machinery.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on May 5, 1979 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined by the Social Security Act, from January 1, 2011, through the date of this decision.

(Tr. 10-17) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*

The Commissioner's determination must stand if it is supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner*, 745 F.2d. at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

Step Two Analysis

Plaintiff argues that the ALJ erred by failing to determine that his depression was "severe" at step two of the sequential analysis.  At this step, the claimant must show that he has an impairment which significantly interferes with his ability to do basic work activities.  *See* 20

C.F.R. §§ 404.1520(c), 416.920(c).  The ALJ's ruling here is viewed under a de minimus standard.  *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 324-25 (6th Cir. 2015).  Thus, a claimant's impairment will only be construed as non-severe when it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education and work experience*." Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (*citing Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).

Nevertheless, an ALJ's failure to properly name one of a claimant's impairments as severe will not always constitute reversible error.  Remand is not necessary so long as the ALJ finds the claimant to suffer from at least one severe impairment and continues to evaluate both the claimant's severe and non-severe impairments at the latter stages of the sequential analysis.  *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) ("[W]hen an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does not constitute reversible error.'").

At step two, the ALJ acknowledged Plaintiff had a determinable impairment of depression, but found that it was non-severe. The ALJ considered the only medical evidence relating to this condition—the opinions of the consultative examiner, Dr. Griffiths, and the state agency psychological consultant, Dr. Swain—as well as the other evidence of record and hearing testimony.  (Tr. 11-12).  Giving little weight to the reports of Drs. Griffiths and Swain, the ALJ found their determinations as to the severity of Plaintiff's depression were not supported by the evidence of record, which "fails to demonstrate that this condition has more than a minimal impact on the claimant's ability to perform work related functions."  (Tr. 12).  Considering the

"B" criteria, the ALJ found no restrictions of daily living activities or episodes of decompensation, and found only mild difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. (Tr. 11). In further support of her determination, the ALJ reasoned that Plaintiff's allegation of severe depression was subsequent to his initial claim for benefits, medical notes did not include complaints or evidence that he suffered from depression over the course of his treatment,[3] and that Plaintiff did not raise significant concerns of depression at the hearing. (Tr. 11-12). The opinion does not specifically refer to Plaintiff's depression after the step two analysis.

Plaintiff's argument that the ALJ erroneously determined that his depression was not severe is not well-taken. Where an ALJ applies the appropriate step two standard, considers the relevant evidence, and draws conclusions supported by the analysis of that evidence, his conclusions at step two will not be disturbed. *See Van der Maas v. Comm'r of Soc. Sec., 198 Fed. Appx. 521*, 527 (6th Cir. 2006) (upholding ALJ's step two finding of non-severe impairment where ALJ properly determined, based on her analysis of record evidence, that claimant's impairment did not "'significantly limit[] basic work activities.'"). Here, the ALJ considered the evidence on the record, including the only opinions directly speaking to his alleged depression, those of Dr. Griffiths and Dr. Swain. Her decision articulated consideration of the "B" and "C" criteria, and found mild to no difficulties or restrictions in the functional areas she is required to assess under 20 C.F.R. §§ 404.1520a and 416.920a. (Tr. 11-12). Further,

---

[3] Review of Plaintiff's medical treatment records, dated from 2009 into 2013, do not reveal any complaints or concerns about depression or other mental health issues, and consistently report normal and unremarkable mental and psychosocial status. (Tr. 308, 428, 433, 435, 439-40, 449, 461, 474-75, 487, 507-08). The sole mention of depression outside of the state agency consultants' reports is Plaintiff's denial of depression in a patient summary relating to his physical impairments. (Tr. 308).

the ALJ provided good reasons that were supported by the record for discounting the opinions of Dr. Griffiths and Dr. Swain, as well as the alleged overall severity of Plaintiff's depression.

There is no merit to Plaintiff's claim that the ALJ ignored expert medical opinions and improperly substituted her own by finding his depression was not severe.  The ALJ is responsible for weighing the medical and non-medical evidence and does not improperly "play doctor" merely because her evaluation of all the evidence leads her to a different conclusion than a given medical opinion.  *See Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 439 (6th Cir. 2010) ("An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding.") (*citing Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009)).  The ALJ did not ignore, but rather clearly considered, the opinions of Drs. Griffiths and Swain, but determined that their conclusions were not substantiated by any objective or credible evidence on the record.  The ALJ expressed good reasons to reject these non-treating source opinions, which were not based on a course of treatment, but rather based entirely on a one-time assessment.  *See generally Coldiron*, 391 Fed. Appx. at 442 (refusing to extend the treating source requirements to consultative examiner that examined claimant only once, explaining treating physicians "have a deeper insight into the medical condition of the claimant than [] a person who has examined a claimant but once, or who has only seen the claimant's medical records.").  The ALJ articulated that, in contradiction to the conclusions of Drs. Griffiths and Swain, the record notably did not include any reference or concerns of depression or mental health issues throughout the relevant treatment period.  *Cf. Winn*, 615 Fed. Appx at 323-25 (finding ALJ impermissibly substituted her own judgment for that of physician when she found claimant's mental impairment was not severe, where treatment records strongly suggested a continuous severe mental impairment, including the opinion from

10

claimant's treating psychiatrist that claimant's mental impairments amounted to "marked" limitations).  Further, although aware that the record contained limited evidence as to his alleged depression, Plaintiff, along with counsel, failed to utilize the opportunity afforded by the hearing to testify as to the severity of this condition.

<u>RFC Analysis</u>

Upon finding that Plaintiff's medically determinable impairment of depression was not severe at step two, the ALJ was required to consider it along with his severe impairments in conducting the RFC analysis.  When formulating an RFC, an ALJ must "'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'" *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 726 (*quoting* 20 C.F.R. § 404.1523), *LaRiccia v. Comm'r of Soc. Sec.*, 549 Fed. Appx. 377, 388 (6th Cir. 2013) ("[T]he ALJ's assessment of residual functional capacity reflects a claimant's functional capacity in light of all his limitations, not just those that are 'severe.'"). This standard recognizes that "the definition of a non-severe impairment contemplates that non-severe impairments may very well impose *some* type of limitation on basic work activities" and that "an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment…does not impose *any* work-related restrictions." *Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, *4 (N.D. Ohio Sept. 21, 2015) (*quoting Katona v. Comm'r of Soc. Sec.*, No. 14-cv-10417, 2015 WL 871617, *6 (E.D. Mich. Feb. 27, 2015) (*citing* 20 C.F.R. 404.1521(a)).

An ALJ's disability determination is not supported by substantial evidence where all impairments, both severe and non-severe, are not considered in the RFC analysis. "Courts within the Sixth Circuit have repeatedly held that 'an ALJ's failure to adequately explain how an

impairment affects an individual's RFC may constitute reversible error.'" *Patterson*, 2015 WL 5560121 at *4 (*quoting Katona*, 2015 WL 871617 at *7).  Even if an ALJ finds it unnecessary to impose any further restrictions due to a claimant's non-severe impairments, the ALJ is required to articulate at this step in the analysis why these impairments do not require a more limited RFC.  *Id.* ("Where an ALJ determines that non-severe impairments do not result in any work-related restrictions or limitations, the ALJ 'is required to state the basis for such conclusions.'") (*quoting Hicks v. Comm'r of Soc. Sec.*, No. 12-13581, 2013 WL 3778947, *3 (E.D. Mich. July 18, 2013) (*citing White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 788 (6th Cir. 2009)).

The ALJ's failure to analyze, or even mention, Plaintiff's depression anywhere in the decision after finding the impairment not severe at step two undermines the ALJ's conclusion that Plaintiff is not disabled. In a factually similar case, the *Patterson* court found remand necessary where, after evaluating the claimant's depression and anxiety at steps two and three, the "RFC analysis focuse[d] exclusively on plaintiff's physical impairments without any discussion of whether her non-severe mental impairments contribute, in any way, to an inability to perform substantial gainful work." *Patterson*, 2015 WL 5560121 at *5.  Similarly here, after the ALJ considered all of the evidence of record concerning Plaintiff's depression at step two, she went on to discuss only Plaintiff's physical impairments in her RFC analysis.  The Court recognizes the step two analysis could support the conclusion that the ALJ merely determined Plaintiff's depression was so minimally limiting that no mental restrictions should factor into the RFC.  However, declining to infer the extent of the ALJ's RFC considerations, the undersigned follows the ruling in *Patterson*, and finds the detailed analysis at step two does not relieve the ALJ of her duty to provide an explanation as to the holistic impact of *all* impairments, both severe and non-severe, specifically in relation to Plaintiff's RFC.  *Patterson*, 2015 WL 5560121

at *6 (finding remand necessary to include mental impairments in RFC analysis despite reasoning at step two that could "support both a finding that the mental impairments are non-severe and that these mild limitations do not restrict work activity.").

Accordingly, remand is necessary in order for the ALJ to conduct a comprehensive RFC analysis.  The ALJ is instructed to consider the cumulative effects of Plaintiff's non-severe impairments, along with his severe impairments, and clearly state the reasons for her conclusions in the RFC analysis.

## VI. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court VACATES the decision of the Commissioner and REMANDS the case to the Social Security Administration.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: December 18, 2015